UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case Number 17-20716
        Honorable David M. Lawson

BYRON SIMON RUCKER,

        Defendant.

_____/

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Defendant Byron Rucker has filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Rucker has served all but about seven months of a 48-month prison sentence for distributing heroin. He argues that a sentence reduction is justified by his age (55) and medical conditions coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government contends that Rucker has not shown extraordinary and compelling reasons for release, and it maintains that he would be a threat to public safety if released because he has several prior convictions and likely will not be law-abiding in the future. Rucker, however, suffers from an immunocompromising disease, which, although well controlled, places him at elevated risk for complications from COVID-19. He also has a diagnosis of asthma that produces symptoms of wheezing, for which he was prescribed an albuterol inhaler. Although these conditions normally would not qualify as extraordinary, they become so when considered against the recent massive COVID-19 outbreak at the Bureau of Prisons (BOP) facility where Rucker is confined, FCI Cumberland. The factors in 18 U.S.C. § 3553(a) do not particularly favor early release, but they do not preclude it, either. Although Rucker has not exhibited a convincing record

of law-abiding conduct, the danger to his health at FCI Cumberland is enough to justify remitting the remaining seven months of his custodial sentence under section 3582(c)(1).

I.

Defendant Byron Simon Rucker pleaded guilty to one count of distributing heroin, 21 U.S.C. § 841(a)(1). On October 28, 2019, he was sentenced to 48 months in prison. Rucker presently is confined by the Bureau of Prisons (BOP) at Cumberland FCI in Cumberland, Maryland, which is a minimum-security facility that houses around 1,070 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on June 22, 2021. Rucker is 55 years old.

On July 29, 2020, Rucker filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The Court appointed counsel and set deadlines for supplemental and responsive briefing. The defendant's counsel filed a supplemental brief in support. The government opposes the motion on the merits.

The most recent data disclosed by the BOP indicates that, since the defendant's motion was filed, a massive outbreak of the virus has overtaken the Cumberland facility, with 202 inmates and 9 staff presently infected. Previously, 20 staff and 12 inmates were infected and had recovered. Reports indicate that, so far, no inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the

inmate after [s]he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Rucker relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, No. 20-3701, --- F.3d ---, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020)

("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

A.

Addressing the first element — extraordinary and compelling reasons — Rucker argues that his age (55) and his pre-existing medical conditions render him vulnerable to complications from the highly-contagious novel coronavirus. His medical conditions include asthma, "gastro-intestinal issues," "history of stroke," "anxiety," and a chronic immune compromising disease as risk factors. In sealed excerpts of briefing and medical records the parties identified the defendant's immune disease as HIV. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Id.* at *2 n.6.

The government concedes that the request for release has been administratively exhausted but insists that the defendant's "asthma" is not classified in available medical records as either "moderate" or "severe," his age does not place him in a recognized high-risk category, and his other diagnoses of "gastro-intestinal issues," "history of stroke," and "anxiety" are not recognized as serious risk factors. The government further argues that the defendant's particular diagnosis of HIV does not qualify as a recognized risk factor because the CDC guidance specifies that only HIV "with a low CD4 cell count" or untreated HIV disease qualifies as a recognized serious

- 4 -

medical risk; the government asserts that the available medical records show that the defendant is being treated for HIV and has a normal CD4 (white blood cell) count.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk

factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  The defendant's age (55) does not put him in a high-risk category, but the CDC does recognize as high-risk factors certain conditions that may lead to immune compromise, and asthma, at least when "moderate" or "severe."  *See* CDC, Risk Factors: People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The most serious condition cited by the defendant is his diagnosis with HIV.  The medical records indicate that the condition is well controlled for now.  However, Rucker has received treatment for this condition over several years and currently is taking medication regularly for it in prison.  The CDC has "limited data" on the effects that COVID-19 can have on an AIDS patient, and it has concluded that "people with HIV who are on effective HIV treatment have the same risk for COVID-19 as people who do not have HIV."  *COVID-19 and HIV*, Centers for Disease Control and Prevention, https://www.cdc.gov/hiv/basics/covid-19.html (last visited Dec. 8, 2020). However, Rucker's treatment has extended over several years and the disease itself is known to compromise the immune system.  *See* CDC Risk Factors, supra ("Many conditions and treatments can cause a person to be immunocompromised or have a weakened immune system. These include: having a solid organ transplant, blood, or bone marrow transplant; immune deficiencies; HIV with a low CD4 cell count or not on HIV treatment; prolonged use of corticosteroids; or use of other immune weakening medicines. Having a weakened immune system may increase your risk of severe illness from COVID-19.").  Recent medical records disclose that the defendant is on an ongoing medication regimen for his HIV condition, with which he reportedly is highly compliant.

Medical Report dated July 15, 2020, ECF No. 211-2, PageID.1630. The defendant "never had an HIV-related illness." Medical Report dated June 29, 2020, PageID.1631. But the condition is sufficient to suggest an elevated risk of complications in a facility where the coronavirus is uncontrolled.

The defendant also asserts that he has asthma. The available medical records do not indicate that his condition is either "moderate" or "severe" and "persistent," which are the recognized grades of asthma indicative of an elevated medical risk. However, medical records confirm that the defendant has sought emergency treatment for compromised breathing as a result of an asthma attack as recently as July 2017, before he entered prison. The CDC recognizes "moderate to severe" asthma as a risk factor for COVID-19 infection. *See* CDC Risk Factors, *supra*; *see also* WedMD: What is Asthma?, https://www.webmd.com/asthma/what-is-asthma ("3. Moderate persistent asthma. Symptoms three to six times a week. Nighttime symptoms three to four times a month. Asthma attacks might affect activities. 4. Severe persistent asthma. Ongoing symptoms both day and night. You have to limit your activities."). The defendant's records indicate that he has been observed with breathing problems (wheezing), prompting the prescription of an inhaler.

Finally, the defendant also asserts that he has "gastro-intestinal issues," "history of stroke," and "anxiety," but the current CDC guidance does not recognize any of those conditions as factors triggering an elevated risk for coronavirus infection.

Another pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which at present appears to be significant, with the recent and severe outbreak. The government's position that the defendant is at little or no risk of infection is belied by its apparent failure to foreclose and contain the spread of the disease at Cumberland, and

is even more suspect considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *See Wilson*, 961 F.3d at 849 (Cole, J., concurring) (observing that in the absence of any program of comprehensive prophylactic testing, reports of low infection rates are questionable at best); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) (same). The proliferation of active cases in the defendant's facility weighs in favor of a finding of extraordinary and compelling circumstances.

B.

Although the defendant has made a satisfactory showing of extraordinary and compelling medical risk, the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 2020 WL 6817488 at *7 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be

considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Rucker's crime is serious. He bought heroin from his source and then distributed it to an old friend who was visiting from another state. Tragically, the friend died after taking the drug, which turned out to be laced with fentanyl. Although Rucker was not held accountable for the death, his conduct led to the horrible outcome. However, "evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'" *Pepper v. United States*, 562 U.S. 476, 491 (2011). "Several courts have . . . considered a defendant's rehabilitation in granting compassionate release." *United States v. Parker*, No. 98-00749, 2020 WL 2572525, at *11 (C.D. Cal. May 21, 2020) (citations omitted). That proves true even when the defendant qualified as a "career offender" and had previously been convicted of several drug offenses and for carrying a concealed weapon. *See United States v. Goins,* No. 11-20376, 2020 WL 3064452, at *1 (E.D. Mich. June 9, 2020).

Rucker has a clear prison disciplinary record. More relevant to the protection-of-the-public factor in section 3553(a), however, is that Rucker's poor health likely renders him incapable of dangerous misconduct. He has served a substantial portion of his custody term, and he asks to be released under home confinement, which will mitigate any threat to the community that he now may pose. He has a plan to live with his mother upon release, who will provide him a room, so he will be able to self-quarantine.

### III.

The government does not dispute that Rucker has exhausted his administrative remedies. He also has established "extraordinary and compelling" reasons for relief within the meaning of

18 U.S.C. 3582(c)(1)(A)(i). The balance of the other pertinent factors do not preclude his request for relief.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 200) is **GRANTED**.

It is further **ORDERED** that the defendant's term of custody is **REDUCED** to time served.

It is further **ORDERED** that this order is stayed for up to fourteen days to allow the Bureau of Prisons to verify the defendant's residence and release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release after the defendant is quarantined. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, quarantine is complete, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

It is further **ORDERED** that under 18 U.S.C. § 3582(c)(1)(A), the defendant must serve a "special term" of supervised release of seven months (in addition to the supervised release term previously ordered). During that special term, the defendant must confine himself to his place of residence, except for work, medical appointments, religious services, and purchasing necessities. The defendant will be subject to GPS location monitoring for the first 210 consecutive days of his home confinement. However, if the defendant is in full compliance with his conditions of supervised release, the probation officer, after 90 days, may discontinue GPS location monitoring. The Court will enter an amended judgment and commitment.

It is further **ORDERED** that the defendant must provide to the probation office in the district where he will be released the complete address where he will reside upon release.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 9, 2020